(15 App. Div. 500.)

## SATTLER v. HALLOCK et al.

(Supreme Court, Appellate Division, Second Department. April 6, 1897.)

BAILMENT—CONSTRUCTION OF CONTRACT—BAILOR'S TITLE.

A bailment, and not a sale, is effected where defendant, under a contract with plaintiff, delivers materials to plaintiff to be manufactured, and receives on delivery the market value of the materials, and plaintiff sells the manufactured products in defendant's name, each party receiving a share of the net proceeds.

Appeal from trial term, Suffolk county.

Action by Theodore Sattler, as assignee, against George W. Hallock and others, for conversion. From a judgment entered on a verdict in favor of defendants, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

John E. Brodsky, for appellant.
Rowland Miles, for respondents.

GOODRICH, P. J. The plaintiff brings this action, as assignee of the firm of John A. Meierdiercks & Sons, against the defendants, who composed the executive committee of the Long Island Farmers' Company, for the conversion of a quantity of pickles, sauerkraut, etc. On February 21, 1895, the firm, which was doing business in New York City, as dealers in pickles, sauerkraut, spices, etc., made a contract with 25 farmers of Smithtown, Long Island, whereby it was agreed that the farmers should form a limited partnership under the name of the Long Island Farmers' Company, for which was substituted, by consent of the parties, a corporation under the same name, the defendants, Hallock, Smith, and Strong, becoming president, vice president, and treasurer, respectively. By the contract the farmers were to deliver to the firm, at a factory at Smithtown Branch previously owned or controlled by the farmers, certain vegetable produce, at prices stated in the contract, which the firm agreed to take and pay for at certain times, at the specified rates. The firm was to make, if necessary, additions to the factory, at a cost not to exceed $300, such cost to be deducted from the net profits due the farmers at the end of the season, the firm guarantying that such net profits should not be less than the net cost of such addition to the buildings, each farmer to receive 20 per cent. pro rata, according to the amount of produce delivered by him at the factory, in addition to the aforesaid prices for produce. The firm was also to furnish all labor, machinery, barrels, salt, spices, freight, and cartage, which expense was to come out of the gross receipts of sales, the manufacture and sale of all products to be done by the firm, the contract to end April 15, 1896. During the summer of 1895, the farmers furnished produce, part of which the firm manufactured and sold; but there was a large amount of produce, some of which was manufactured or partly manufactured, on the 17th of September, when the firm made its assignment to the plaintiff. The plaintiff alleges that on the 20th of September he took possession of the firm's property at the factory, but the same was forcibly and wrongfully taken from him by the defendants. At the trial, evidence was given under the allegation of possession by the plaintiff and by the defendants, and also as to the value of the property in question.

The plaintiff asked the court to direct a verdict for him, except as to the amount of damages. This was refused, and exception taken. The court charged that the firm became the owner of the produce delivered at the factory, and submitted a further question,

whether the original agreement had been altered or substantially modified by any business agreement between the parties. We do not see any evidence justifying the submission of any such question, nor was it suggested at the trial by either party.

On the argument of this appeal, the respondents admitted that in this respect the charge was erroneous, but contended that the verdict should be sustained, on the ground that the defendants never parted with the title to the produce, and on the ground that the contract was a bailment, and not a sale of the produce. We are of the opinion that this view is correct.

In the case of Gregory v. Stryker, 2 Denio, 628, Justice Beardsley, at page 631, says:

"Various cases have arisen in which property in a raw state was delivered by one person to another, upon an agreement that it should be wrought upon and improved by the labor and skill of the bailee, and, when thus improved in value, should be divided in certain proportions between the respective parties, and in which it was held that the original owner retained his exclusive title to the property until the contract had been completely executed; and this, notwithstanding the labor to be performed by the bailee might be equal or even greater in value than that of the property when received by him."

In the case of Stewart v. Stone, 127 N. Y. 500, 28 N. E. 595, the plaintiff and his assignors were patrons of the defendant's factory, where they and others delivered milk to the defendant, to be by him manufactured into cheese and butter, which was to be sold, and the proceeds divided between them in the manner provided by the agreement. The court (Judge Bradley) held that the contract was one of bailment, involving the performance of service by the defendant, and in the result the parties were mutually interested.

We can see no distinction between the principle of these cases and the case at bar. It is true that the firm agreed to pay the farmers a certain sum upon the delivery of the produce, or shortly thereafter; but the sums thus paid, like the $300, cost of the addition to the factory, were to be treated as a part of the expenses of manufacturing, and were to be deducted before the net profits were ascertained. It makes no difference whether the compensation of the firm for manufacture and sale was to be paid at a specified rate per cent., or by a division of the net profits. The relation of bailor or bailee was not changed thereby. The title to the produce remained in the farmers or in the corporation through which the business was transacted. This construction is evidenced by the clause of the contract which reads, "The manufacture and sale of all the products of the Long Island Farmers' Co. shall be done by J. A. Meierdiercks & Sons;" and by two bills of goods sold under the contract, one of which reads, "J. A. Meierdiercks & Sons, Agts. Long Island Farmers' Co.," and the other, which reads, "Bought of the Long Island Farmers' Co., J. A. Meierdiercks & Sons, Agts.;" and by the further fact that the checks for goods sold by the firm were made payable to the company, which refused to give the firm a power of attorney to indorse them and similar checks, as they should be received from time to time. The contract also provided that if, at any time, the business of the com-

44 N.Y.S.—35

pany should cease, and the property, including buildings, utensils, barrels, etc., be sold or bartered, the company guarantied to the firm 35 per cent. of the amount realized. This clause still more clearly indicates that the title to and control of the factory, produce, and other contents remained in the company, subject to the disposal of the company, without consultation with the firm. Under these circumstances, the title to the produce did not pass to the firm, nor from the firm to the plaintiff, as its assignee; and it follows that the plaintiff cannot maintain this action.

On either theory, therefore, of bailment or of partnership, the judgment must be affirmed. All concur, except CULLEN, J., who concurs in the result.