## Hiram Whitcomb v. David Whitney, Jr.

*Personal property: Contract of sale: Delivery: Title.* Under a contract for the sale of personal property not within the statute of frauds, manual delivery of the articles sold is not essential to the passing of the title, unless made so by the understanding of the parties; and their intention is the governing consideration in every case.

*Lumber: Contract of sale: Inspection: Delivery: Title: Loss.* Under a contract for the sale of all the lumber of a certain quality manufactured at a certain mill during a season "to be delivered on rail of vessel when lumber is ready to ship, or when vessel is ready to send for it," when, at the end of the season, upon notice from the vendor, the vendee has sent an inspector, who, acting for both parties, has inspected the lumber at the mill, which, as fast as it was inspected, has been hauled some forty rods to the dock to be ready for delivery on the vessel, and the vendee has been notified thereof, the title passes and vests in the vendee; so that, upon its destruction by fire without fault, neglect or carelessness on the part of the vendor, the latter is entitled to recover the purchase price.

*Heard April 11 and 12. Decided April 16.*

Error to Wayne Circuit.

*D. B. & H. M. Duffield* for plaintiff in error.

*D. C. Holbrook* for defendant in error.

COOLEY, J.

The main facts in this case are undisputed. On the sixteenth day of March, 1871, the parties made a contract evidenced by the following writing:

WHITCOMB v. WHITNEY.

"DETROIT, March 16, 1871.

"Received of D. Whitney Jr. five hundred dollars on account for all. the upper qualities and select common and cutting up or fine common lumber that I make at Rock Falls in town of Sand Beach, Michigan, this season, at fair price, what said Whitney can afford to pay; the lumber is to be delivered on rail of vessel when lumber is ready to ship, or when vessel is ready to send for it.

(Signed) "HIRAM WHITCOMB."

The defendant from time to time advanced moneys upon this agreement, and received one cargo of lumber, in respect to which no question arises. On September 22, 1871, plaintiff wrote defendant as follows: "I have all my logs now sawed; lumber ready to ship. The sooner you send a vessel the better I would like it. I think there will be seventy M. or more." On the receipt of this letter defendant sent an inspector to Rock Falls, who arrived there about the fourth of October, and inspected and approved of about sixty-four M. feet of the lumber, acting for both parties in so doing. The lumber when inspected was at plaintiff's mill, but as fast as the inspection proceeded, it was hauled on the dock, some forty rods, to be ready for delivery on the vessel when one should be sent for it. The inspection was completed on the sixth of October, and defendant was notified thereof on the eleventh of the same month. Two days before the time last mentioned, however, the lumber was destroyed by fire, without any fault, neglect or carelessness on the part of the plaintiff, and when this fact came to the knowledge of defendant, he refused to pay for the lumber, and this suit is brought for the value. The declaration contains a count for goods sold and delivered, and also a special count setting out the facts; averring plaintiff's readiness and willingness to deliver the lumber on the rail of the vessel when one should be sent for

it, but that before defendant sent any vessel to take it, though he had ample time to do so, and to load and take away the same, the lumber was destroyed by fire without the fault, neglect or carelessness of plaintiff, by means whereof the defendant became liable to pay a fair price therefor, etc.

It does not seem to be necessary to set forth the various requests to charge which were made in the court below, nor the charges given; the question in this court is simply this: whether, under the facts stated, the lumber at the time it was accidentally destroyed had or had not become the property of the defendant so as to be at his risk. The circuit judge in effect held that it had not.

In support of the ruling of the circuit judge we are referred to several decisions, some of which present questions arising under the statute of frauds, and obviously have no application here. Others were decisions upon contracts for the manufacture and delivery of specific articles, under which no title could pass until the specific thing was completed and delivered, or in some manner identified and set apart by the act of the parties. *Johnson v. Hunt, 11 Wend., 137,* presented the question whether lumber which was being got ready by a builder to put into a house which he had contracted to put up for another, became the property of his employer before it was actually built into the house; and the court held that it did not. This was clearly correct, as up to that time the contractor had an undoubted right to use it for any other purpose if he pleased. *Comfort v. Kiersted, 26 Barb., 472,* was the case of a contract for shingles to be manufactured, and which by the terms of the contract were to be the property of the vendees, at eighteen shillings a thousand, on the vendor's premises, as fast as manufactured; he, however, agreeing to deliver them at the store of the vendees, and to be paid three dollars a

thousand at that place. The contract fixed the amount to be delivered at 100 M., but with the privilege, on the part of the vendees, to increase it to 150 M. The court held that the shingles did not become the property of the vendees until in some way designated and set apart so as to be capable of being identified as their property. The sale was not of all the party might make, but only of a specified quantity; and the court illustrate their view of the contract by saying, the vendor might have made precisely such a contract with another person, in which case the shingles "would have become the property of the one or the other of the parties to whom he had agreed to sell them, according to their designation." This case differs from *Comfort v. Kiersted* in two important particulars: *First*, the purchaser here was to have *all* the lumber of certain kinds which should be cut; and, *second*, the lumber coming within the terms of the contract was particularly identified and designated by the act of inspection. *Andrews v. Durant, 11 N. Y., 35*, presented the question whether, under a contract for the building of a vessel of certain specified dimensions, to be delivered complete by a day named, for a certain price, to be paid as the work progressed, any property in the vessel passed before the vessel was completed; and it was held it did not. That case also has very little bearing upon the one now under consideration.

What is the case here? The contract is for the purchase of all the lumber of certain grades that plaintiff shall manufacture at Rock Falls during the season. The plaintiff could not have sold a foot of it to any other person without a distinct violation of his contract obligations. From the time of its manufacture nothing would need to be done to determine the right to the defendant in any particular parcel, but to have it properly settled that it fell within one of the grades contracted for. An agent duly author-

24 mich.—62.

ized had determined that as to all the lumber in question, and had done what amounted to an acceptance of it on the part of the defendant. It had then been set apart and stored in a proper place for the defendant, and was subject to his order. Nothing remained to be done by the plaintiff except to deliver it on the rail of the vessel; and that he could not do until the vessel was sent. Everything now depended on the action of the defendant, which might be expedited or delayed as should suit his own convenience. Had this been a contract for the completion of a carriage from specified materials, to be delivered when sent for, and had it been fully completed and accepted, so that nothing remained to be done except to make the manual delivery when it should be called for, the setting apart of the property under the contract could not have been more complete and unquestionable than it was here.

Where the case is not within the statute of frauds, manual delivery of the article sold is not essential to the passing of the title unless made so by the understanding of the parties. They may agree when and on what conditions the property in the subject of such a contract shall pass to the prospective owner.—Denio, J., in *Andrews v. Durant, 11 N. Y., 42.* Their intention must be the governing consideration in every case.—Channell, B., in *Turley v. Bates, 2 H. & C., 211.* The title may pass notwithstanding the price is yet to be determined.—*Turley v. Bates, supra; Valpy v. Gibson, 4 M. G. & S., 837.* In *Olyphant v. Baker, 5 Denio, 382,* it is said to be " a general rule of the common law, that a mere contract for the sale of goods, where nothing remains to be done by the seller before making delivery, transfers the right of property, although the price has not been paid, nor the thing sold delivered to the purchaser." And of the numerous cases in which the expression is used, that if any thing remains to be done by

the seller the title does not pass, Selden, J., in *Terry v. Wheeler*, *25 N. Y.*, *525*, says they only go the length of showing, that where something is to be done by the seller to ascertain the identity, quantity or quality of the thing sold, or to put it in the condition which the terms of the contract require, the title does not pass. And he, therefore, holds with the approval of the whole court, that an agreement by the vendor of lumber to transport it to the cars and deliver it free of charge, did not prevent the title passing immediately where what was sold was selected and designated.

Suppose this lumber had not been destroyed and the defendant's vessel had called at the dock for it; could the plaintiff have refused to allow him to take the lumber away, and maintained replevin for it if he had done so? If the title had not passed, he could; if it had, he could not. If it was still his property and at his risk, he might have sold and conveyed a good title to a third person in the very presence of the defendant after his vessel had arrived to take it away; subjecting himself only to a liability to damages on his contract for a failure to perform it. But we think if he had attempted this, the defendant would not have hesitated to say: "This property is mine; it has been set apart specifically for me, by contract, by inspection, and by designation; by every act, in short, which the circumstances admitted of being done; the vendor owes a service to me in putting it on the rail of the vessel, which he can either perform or be liable for the value of; but if he performs it, it will be in respect to property previously identified as mine, and not at all by way of designation or measurement. Whoever buys this lumber of him, buys what has not only been previously bought by me, but what has been set apart for me and placed at my disposal by the most unequivocal acts; and I have therefore become

vested with a title which I shall maintain and enforce." This is what he would have been likely to say had the unfortunate fire not occurred; and this the law would have justified him in saying. It follows that the plaintiff is justified in demanding payment from him on the purchase.

The judgment of the circuit court must be reversed, and a new trial ordered.

CHRISTIANCY, CH. J., and CAMPBELL, J., concurred.

GRAVES, J., did not sit in this case.